UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| SHADNEY HAMER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-504 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COUNTY OF KENT, et al., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought under 42 U.S.C. § 1983 by a former inmate of the Kent County Correctional Facility. Plaintiff's claims arise from an alleged lack of medical care in May of 2010, when plaintiff was experiencing severe abdominal pain. Plaintiff alleges that his complaints and symptoms were essentially ignored for a seven-day period from May 10 through May 17, 2010, until he was sent to the emergency room of the hospital, where he was diagnosed with a ruptured appendix and peritonitis, which required surgery. He alleges that defendant Jeffrey Pavlovic, a corrections officer, was deliberately indifferent to plaintiff's need for urgent medical care. He further alleges that Dr. Daniel Carrel and Nurses Sharon Kaufman, Paul Albin, and Phil Rengo were personally aware of plaintiff's situation but were deliberately indifferent to his need for medical care. In addition to naming the individual defendants, plaintiff's complaint names as defendants Kent County and Corizon Health, Inc. (formerly Prison Health Services, Inc.), a for-profit corporation that employed the doctor and nurses under contract with Kent County.

Two dispositive motions are presently pending before the court. Kent County has moved to dismiss the complaint under Fed. R. Civ. P. 12(c), alleging that the complaint does not state a plausible claim of municipal liability for any acts or omissions of Corrections Officer Pavlovic. The second motion is brought by Corizon and the individual defendants within its employ. Corizon seeks to dismiss plaintiff's section 1983 claim for failure to allege that any acts or omissions by the individual defendants resulted from a policy or practice of their employer, Corizon. The individual defendants have moved to dismiss count II, a pendent state-law claim for gross negligence, asserting that the claim must be treated as a malpractice claim under Michigan law.

United States District Judge Robert Holmes Bell has referred this matter to me for all pretrial purposes, including the issuance of a report and recommendation on dispositive matters. I conducted a hearing on both motions on October 29, 2013. For the reasons set forth below, I conclude that both motions are meritorious and that they should be granted.

**Applicable Standard**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) requires application of the same standards that govern motions to dismiss under Rule 12(b)(6). *See Reilly v. Vadlamud*i, 680 F.3d 617, 622 (6th Cir. 2012); *Roger Miller Music, Inc. v. Sony/ATV Pub., LLC*, 477 F.3d 383, 389 (6th Cir. 2007). Rule 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citing FED. R. CIV. P. 8(a)(2)); *see Center for Bio-*

*Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011). While this notice pleading standard does not require "detailed" factual allegations, it does require more than the bare assertion of legal conclusions. *Twombly*, 550 U.S. at 555; *see Kolley v. Adult Protective Servs.*, 725 F.3d 581, 585 (6th Cir. 2013). The court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor. *See Reilly v. Vadlamudi*, 680 F.3d at 622. The court need not accept as true legal conclusions or unwarranted factual inferences. *Berrington v. Wal–Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012). *Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even the lenient treatment generally given *pro se* pleadings has its limits. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570; *see Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 567 (6th Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010)(quoting *Iqbal*, 556 U.S. at 678). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 557).

**Discussion**

**I.      Kent County**

It is now hornbook law that municipalities are not vicariously liable under 42 U.S.C. § 1983 for the acts or omissions of their employees. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978). Rather, local units of government are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986). To succeed on a claim of municipal liability under section 1983, a plaintiff must establish that his constitutional rights were violated and that a policy or custom of the county was the "moving force" behind the deprivation of plaintiff's rights. *Miller v. Sanilac County*, 606 F.3d 240, 254-55 (6th Cir. 2010); *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 362 (6th Cir. 2001). In the factual context of this case, a plaintiff could establish liability under *Monell* in one of two principal ways.[1] First, liability may be premised on the existence of an express policy adopted by the appropriate authorities. *See Adkins v. Bd. of Educ. of Magoffin County, Ky.*, 982 F.2d 952, 957 (6th Cir. 1993). In the absence of a formally adopted policy, liability may be premised on the existence of a custom. For purposes of *Monell*, a custom must be "so permanent and well settled as to constitute custom or usage with the force of law." *Monell*, 436 U.S. at 691. It must reflect a course of action deliberately chosen from among various alternatives. *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985).

Second, liability may be premised by a municipality's failures, namely, a failure to institute a policy or the failure to train its employees. Liability on this theory only exists where the

---

[1] A third basis for municipal liability exists where the act complained of is that of a decisionmaker possessing final authority to establish municipal policy with respect to the action ordered. *See Pembaur*, 475 U.S. at 481. This basis for municipal liability does not apply here, as none of the individual defendants is alleged to be a "final decisionmaker" for his or her employer.

need to act "is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (failure to train); *see Heyerman v. County of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (failure to adopt policy and failure to train). To state a claim under a theory of "inaction," the plaintiff must establish:

    (1)    The existence of a clear and persistent pattern of constitutional violation by employees;

    (2)    Notice or constructive notice on the part of the municipality;

    (3)    The municipality's tacit approval of the unconstitutional conduct, such that its deliberate indifference in failing to act can be said to amount to an official policy of inaction; and

    (4)    That the failure to act was the "moving force" or direct causal link in the constitutional deprivation.

*See City of Canton*, 489 U.S. at 388-89 (failure to train); *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996) (failure to act); *see also McCoy v. Bd. of Educ., Columbus City Sch.*, 515 F. App'x 387, 393 (6th Cir. 2013); *Soles v. Ingham County*, 316 F. Supp. 2d 536, 544-45 (W.D. Mich. 2004), *aff'd*, 148 F. App'x 418 (6th Cir. 2005).

The complaint attempts to establish a factual predicate for municipal liability against the County by alleging a conclusory list of alleged acts and omissions. Paragraph 42 of the complaint lumps the County and Corizon into a single paragraph, making the following allegations against both of them:

42. That all individual defendants, including Kent County and Prison Health Services exhibited deliberate indifference to plaintiff's serious medical needs through its policies, practices and customs, which was the moving force in the violation of clearly established constitutional rights, including but not limited to:

   a. Failure to train correction officers, nurses and physicians at the Kent County Jail in the proper determination of medical emergencies and such omitted training was the moving force in the constitutional violations resulting in a deliberate indifference to serious medical need suffered by plaintiff.

   b. Failure to make appropriate and necessary steps to discover and determine that its policies, practices and procedures had and would continue to result in injuries to plaintiff and those similarly situated by specifically, failing to have a policy of assessing serious medical need for illnesses common to an ordinary person or, if having such a policy, failed to enforce same.

   c. Failure to effectively train and supervise individual defendants with regard to the proper constitutional and statutory limits of their authority.

   d. Failing to adequately train medical staff and other employees to recognize signs of serious medical need, so obvious that even a layperson would recognize the need for qualified medical attention;

   e. Failing to implement protocols and policies consistent with those of the National Commission on Correctional Health Standards regarding inmate access to timely and adequate health care;

   f. Failing to supervise medical staff to prevent the violations of inmates' constitutional rights;

   g. Failing to have policies and procedures to assure that serious medical needs are being addressed after said needs are brought to the attention of corrections officers, and nurses or doctors.

   h. Defendants' practice of treating inmates complaining of pain, sickness, and injury as malingerers undeserving of timely medical care

   i. Defendants' deliberate indifference to plaintiff's serious medical needs and the serious medical needs of other inmates based on the

> presumption of malingering, withholding timely access to emergency medical care unless imminent death is absolutely apparent;
>
> j. Defendants' failure to maintain humane conditions of incarceration as required by the Eighth and Fourteenth Amendments of the U.S. Constitution;
>
> m[sic] Making health care decisions, including, but not limited to, decisions to send inmates to emergency departments or other specialized care, based upon budgetary concerns over inmate safety.

(Compl., ¶ 42, ID#s 10-11).

Only one of the allegations in paragraph 42 can be deemed an affirmative policy or practice within the meaning of *Monell*. Paragraph 42(m) alleges that the County makes health care decisions, including decisions to send inmates to the emergency room, based on budgetary concerns over inmate safety. When asked for an explanation of this vague assertion at oral argument, plaintiff's counsel explained that the County has entrusted health care decisions to Corizon, a for-profit corporation, thereby creating a conflict between prisoners' medical needs and the corporation's desire to make a profit. The same could be said, of course, about any HMO or other capitated health insurance system, all of which create an inherent tension between patient care and the cost of care. This hardly raises a plausible inference of deliberate indifference to serious medical needs.

The Sixth Circuit has already rejected this sort of vague municipal "policy" as a basis for liability under section 1983. *Graham v. County of Washtenaw*, 358 F.3d 377 (6th Cir. 2004), involved a Michigan county that had entered into a comprehensive contract with SecureCare for the provision of medical care to county prisoners. The personal representative of the decedent sued the county for the death of a jail inmate who, plaintiff asserted, was the victim of a gross mistake by one of SecureCare's nurses. The essence of the municipal liability claim, as distilled by the Sixth

Circuit, was that the county's contract with SecureCare constituted a municipal policy that led to a deprivation of the decedent's constitutional right to adequate medical care. 358 F.3d at 382. The Sixth Circuit rejected the claim of municipal liability, not because the decedent's constitutional rights had not been abridged, but because no county policy was "the moving force" behind the violation. *Id.* at 383. The court remarked that it is "not unconstitutional for municipalities to hire independent medical professionals to provide on-site health care to prisoners in their jails." *Id.* at 384. The court found such a policy to be laudable, as it allows prisoners to receive prompt health care from on-site medical personnel rather than corrections officers. Plaintiff's argument in *Graham* was identical to that advanced in the present case: "Graham's argument is essentially that the County's policy did not, in this particular case, adequately address Mr. Graham's specific medical needs." *Id.* The court conceded that the policy might be flawed, but that such a flaw did not rise to constitutional magnitude. "The fact that alternative procedures might have better addressed [a prisoner's] particular needs does not show that the [county was] deliberately indifferent to his medical needs." *Id.* The court pointed out that, consistent with the Supreme Court's decision in *City of Canton*, there can be no municipal liability "where 'an otherwise sound program has occasionally been negligently administered.'" *Id.* (quoting *City of Canton*, 489 U.S. at 391).

For this reason, the Court of Appeals affirmed a summary judgment on behalf of the county. The court's comments in *Graham* apply with equal force to the present case.

> In sum, the County instituted its policy regarding the provision of medical care to prisoners undoubtedly in an effort to improve the quality of their medical care. Even if Mr. Graham received constitutionally inadequate medical care, there is simply no evidence that the policy was the "moving force" behind that constitutional violation. *Waters*, 242 F.3d at 362. Under the circumstances presented in this case, the section 1983 claim against the County was properly dismissed.

358 F.3d at 385.

Some of the remaining allegations are insufficient on their face. A failure to train jail employees concerning "the constitutional and statutory limits of their authority" (¶ 42(c)) could not possibly have caused plaintiff's injuries. A jail guard is not required to be a legal scholar. In the context of this case, the guard must only understand that he may not be indifferent to inmate medical needs that are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004). Ignorance of constitutional boundaries has no relevance to this case. Likewise, it is tautological to allege a "failure to maintain humane conditions of incarceration." (¶ 42(j)). That conclusory allegation places no one on notice of any specific municipal policy or practice. And the allegation that the jail's medical procedures do not meet the standards of the "National Commission on Correctional Health" (¶ 42(e)) states, at best, a claim of negligence, not deliberate indifference.

The remainder of plaintiff's allegations in paragraph 42 do not assert the existence of an affirmative custom or policy by Kent County, but allege the County's failure to train its employees and failure to adopt policies and procedures to assure proper medical care. For present purposes, I accept as true the allegation that the County failed to implement training and to adopt policies as alleged. The glaring omission in plaintiff's allegations, however, is the lack of facts showing a preexisting pattern of constitutional violations by County employees that should have alerted the County of a need for more training or different policies.

Put another way, the mere failure to train employees, standing alone, is not actionable under section 1983. Plaintiff must also show that the need for a policy, or for further training, is so obvious that the municipality's conscious decision not to act can be said to amount to a policy of

deliberate indifference. *City of Canton*, 49 U.S. at 389. The Supreme Court has recently remarked that the deliberate indifference standard applicable to claims of inaction "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011). Thus, "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* And the Sixth Circuit reiterated, just last week, that a failure to train claim requires a showing of "prior instances of unconstitutional conduct demonstrating that the municipality ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Burgess v. Fischer*, No. 12-4191, ___ F.3d ___, 2013 WL 5873323, at * 10 (6th Cir. Nov. 1, 2013).

Plaintiff's allegations are devoid of any reference to a pattern of similar constitutional violations by untrained jail employees, such that the County's decision not to train them could amount to deliberate indifference. The disagreement between the parties in this case turns on whether such an allegation is necessary at the pleading stage. Plaintiff asserts that discovery is necessary for a plaintiff to be in a position to allege such a preexisting pattern of constitutional violations. Plaintiff relies on *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), for the proposition that a plaintiff need only allege the existence of a municipal policy in order to meet the federal pleading standard. Defendants rely on the more recent Supreme Court decisions in *Twombly* and *Iqbal*, asserting that the facts set forth in a complaint must at least raise a plausible inference of wrongdoing. *See Iqbal*, 556 U.S. at 678.

Plaintiff's reliance on *Leatherman*, to the exclusion of after-decided Supreme Court authority, is unavailing. *Leatherman* stands only for the proposition that civil rights claims alleging

municipal liability are not subject to a heightened pleading standard. 507 U.S. at 167. Consequently, the *Leatherman* court applied the then-prevailing pleading standard enunciated in *Conley v. Gibson*, 355 U.S. 41 (1957), to find that the complaint was sufficient. 507 U.S. at 168. *Twombly* and *Iqbal* did not overrule *Leatherman*. Even after *Twombly* and *Iqbal*, a district court would err in imposing a heightened pleading standard on a complaint alleging municipal liability. Rather, the district court must now apply the new pleading standard applicable to all federal cases as a result of *Twombly* and *Iqbal*. Under that standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In short, although *Twombly* and *Iqbal* did not overrule *Leatherman*, they did overrule *Conley v. Gibson* by enunciating a new pleading standard applicable to all federal cases. *See New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011).[2]

Plaintiff's complaint fails to allege a single fact which, accepted as true, could support a plausible inference that the county was on actual or constructive notice of the existence of a "clear and persistent pattern of constitutional violation" giving rise to a need for different training or policies. Plaintiff's assertion that he should not be required to plead any such facts before engaging in discovery is foreclosed by the recent decision of the Court of Appeals in *New Albany Tractor*.

---

[2] Plaintiff's reliance on this court's decision in *Modd v. Ottawa County* (attached as Exhibit 4 to plaintiff's brief, docket # 28-4) is unavailing. The legal standard applied in *Modd* is no different from the pleading standard described above. The municipality's motion to dismiss the complaint was denied in *Modd* precisely because the complaint alleged that the municipality was aware of a serious deficiency in delivering psychotropic medications to inmates because, on at least twelve prior occasions, incoming inmates were denied medications that had been prescribed before their incarceration. (*Id.* at ID# 431). Accepted as true, this allegation allowed at least a plausible inference that the county was on notice of a need for different training or policies. (*Id.* at ID#s 432-33). This is precisely the kind of allegation of prior incidents that is conspicuously missing from plaintiff's complaint.

*New Albany Tractor* was an antitrust case brought under the Robinson-Patman Act for discriminatory pricing. The basic question identified by the Sixth Circuit was the effect of *Twombly* and *Iqbal*, in that the complaint failed to set forth any facts concerning prices, as that information was within the exclusive knowledge of the defendants. 650 F.3d at 1050. Plaintiff pointed to this factor as an excuse for its failure to meet the *Twombly* and *Iqbal* standard. The Court of Appeals conceded that it was likely true that only defendants would have knowledge of the relevant facts before litigation was commenced and that before *Twombly* and *Iqbal*, the federal courts would have allowed the case to proceed so that plaintiff could conduct discovery to gather information in the sole possession of defendants. *Id.* at 1051. The court held, however, that *Twombly* and *Iqbal* dictate a different result:

> The plaintiff apparently can no longer obtain the factual detail necessary because the language of *Iqbal* specifically directs that *no* discovery may be conducted in cases such as this, even when the information needed to establish a claim of discriminatory pricing is solely with the purview of the defendant or a third party, as it is here. By foreclosing discovery to obtain pricing information, the combined effect of *Twombly* and *Iqbal* require plaintiff to have greater knowledge now of factual details in order to draft a "plausible complaint." . . . The plaintiff may not use the discovery process to obtain these facts after filing suit. The language of *Iqbal*, "not entitled to discovery," is binding on the lower federal courts.

650 F.3d at 1046 (citations omitted). The days of "shoot first, ask questions later," are over in the federal district courts.[3]

The allegations of paragraph 42, accepted as true, establish only that the County failed to train its employees concerning medical issues that could have prevented the incident alleged in the complaint. These allegations, standing alone, prove nothing. Plaintiff is also required to plead

---

[3] Plaintiff has now had the benefit of over four months of discovery. He is free to seek leave to amend for the purposes of alleging facts showing a previous pattern of unconstitutional conduct, if he now has such facts as a result of past discovery.

-12-

facts raising a plausible inference that the County was on notice of its need to train, or adopt new policies, because of a clear and persistent pattern of previous constitutional violations by its employees. In the absence of such an allegation, the alleged failure to train is perfectly consistent with constitutional behavior by the County, as the County has no constitutional duty to train in the absence of a clear and persistent pattern of prior employee misconduct showing the need for such training. Allegations that are equally consistent with legal and illegal conduct fail to meet the plausibility standard under *Twombly* and *Iqbal*. Put another way, the lack of training is *consistent* with unconstitutional behavior by the County but does not *plausibly suggest* wrongdoing without further allegations concerning a pattern of prior employee misconduct. *See Twombly*, 550 U.S. at 557. Without such necessary allegations, plaintiff's complaint merely alleges an isolated instance of employee indifference to serious medical needs, which is insufficient to create municipal liability.

## II. Corizon Health, Inc.

The sufficiency of the complaint with regard to defendant Corizon Health, Inc. is governed by the same principles that apply to Kent County. Plaintiff alleges that the four health professionals involved in this case (Dr. Carrel and Nurses Kaufman, Albin, and Rengo) were employed by Corizon under contract with the County. The Sixth Circuit has squarely held that a plaintiff cannot premise the liability of a corporate defendant on the theory of *respondeat superior*. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). Rather, a plaintiff must plead and prove that his constitutional rights were violated as a result of a policy or custom of the employer, which was the moving force behind the deprivation of rights. *See Savoie v. Martin*, 673 F.3d 488, 493-94 (6th Cir. 2012).

Plaintiff's complaint attempts to establish the liability of Corizon in paragraph 42, with vague, all-purpose allegations directed against both the County and Corizon. With regard to Corizon, these allegations are even more deficient than they are with respect to the County. Plaintiff alleges, for example, that Corizon failed to train its nurses and physicians "in the proper determination of medical emergencies." (Compl., ¶ 42(a)). Standing alone, this allegation borders on the absurd. In the absence of previous problems in diagnosing medical emergencies, how would a corporate employer ever be on notice that a licensed physician was unaware of the proper determination of medical emergencies, which is the very expertise that a licensed medical doctor is presumed to possess?

The allegations of the complaint, taken as true, do not raise a plausible inference that Corizon was on actual or constructive notice of a persistent pattern of unconstitutional behavior by its licensed employees, such that Corizon should have adopted better policies or more training to prevent similar occurrences. In the absence of these crucial allegations, the complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983 against Corizon.

**III.    Gross Negligence Claims Against the Individual Defendants**

Count II is addressed to the individual defendants alone. It alleges that their failure to diagnose and treat plaintiff's symptoms amounts to gross negligence under Michigan law. Dr. Carrel and Nurses Kaufman, Albin and Rengo have moved to dismiss count II on the ground that it fails to state a claim under the law of the State of Michigan. These defendants essentially argue that plaintiff's claim, although purporting to be based on gross negligence, is in actuality a medical

malpractice claim and therefore is subject to certain requirements of Michigan law that plaintiff has not satisfied.

Plaintiff has alleged a claim of gross negligence expressly in order to avoid the immunity otherwise accorded state employees by the Michigan Governmental Immunity From Tort Liability Act, MICH. COMP. LAWS § 691.1407. (Compl., ¶ 52). That Act grants immunity from certain claims to "each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency" unless certain prerequisites are met, including an allegation that the individual's conduct amounted to gross negligence that is the proximate cause of the plaintiff's injury. MICH. COMP. LAWS § 691.1407(2). By reason of this statute, claims of simple negligence are no longer actionable against governmental employees and the other individuals listed in section 691.1407(2). The effect of the statute is to raise the standard of care to gross negligence. *See Fundunburks v. Capital Area Transp. Auth.*, 748 N.W.2d 804 (Mich. 2008); *Poppen v. Tovey*, 664 N.W.2d 269, 273 (Mich. Ct. App. 2003).

Plaintiff has failed to establish, however, that these defendants even qualify for immunity under this statute, as they are not officers or employees of a governmental agency. The Michigan Governmental Immunity Act defines "governmental agency" as "this state or a political subdivision." MICH. COMP. LAWS § 691.1401(a). Plaintiff alleges, and defendants admit, that Corizon is a foreign corporation providing health care services to inmates pursuant to contract (Compl., ¶ 10) and that defendants Carrel, Kaufman, Albin and Rengo are either employed by Corizon or contract with that corporation to provide services. (Compl., ¶¶ 12-16). By plaintiff's own allegations, these defendants are not employees of a governmental agency. *See Rambus v.*

*Wayne Co. Gen. Hosp.*, 483 N.W.2d 455 (Mich. Ct. App. 1992) (doctor employed by private corporation providing medical services to county hospital not entitled to governmental immunity). The Michigan appellate courts "see no reason to extend the protection of governmental immunity to a private entity, or its agents or employees, merely because it contracts with, or acts on behalf of or by the authority of, a governmental agency." 483 N.W.2d at 457-58; *accord Fareed v. G4S Secure Solutions (USA), Inc.*, No. 12-14300, ___ F. Supp. 2d. ___, 2013 WL 1799867, at * 9 (E.D. Mich. Apr. 29, 2013) (employees of private security firm under contract at county courthouse not entitled to governmental immunity on state-law claims). Plaintiff's counsel was invited to file a supplemental citation to any Michigan case holding that the employee of a private corporation doing governmental contract work is entitled to invoke this statutory immunity. Counsel has not done so, and I am aware of no such case. The Governmental Immunity statute has no bearing on the claims against the doctor and nurses here, as they are not governmental employees, volunteers acting on behalf of any agency, or members of a task force.[4] MICH. COMP. LAWS § 691.1407(2).

Stripped of the confusion injected by the complaint's citation to a governmental immunity statute that has no application to private parties, count II alleges a claim for gross negligence against medical professionals. Therefore, recourse to Michigan law is necessary to determine the nature of plaintiff's underlying cause of action against the doctor and nurse defendants in this case.

---

[4] Although health professionals providing services to jail inmates under contract clearly act under color of state law for purposes of section 1983, *see West v. Atkins*, 487 U.S. 42 (1988), the question whether they are employees of a governmental agency for purposes of Michigan's Governmental Immunity Act is a distinct question.

The governing controlling authority on this issue is *Bryant v. Oakpointe Villa Nursing Centre*, 684 N.W.2d 864 (Mich. 2004). *Bryant* was a wrongful death action against a nursing home in which the decedent's personal representative made various claims of wrongdoing. The question for the Michigan Supreme Court was whether "each claim sounds in medical malpractice or ordinary negligence." 684 N.W.2d at 867. Under Michigan law, this question is governed by two factors. The first is whether the act or omission occurred "within the course of a professional relationship." *Id.* at 871. Second, claims of medical malpractice necessarily raise questions involving medical judgment, while claims of ordinary negligence raise issues that are within the common knowledge and experience of the factfinder. *Id.* If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions. *Id.* Applying this test, the court found that plaintiff's claims that the nursing home failed to train staff to assess the risk of potential asphyxia arose in malpractice, as was the claim that the home failed to inspect the bed frame and mattress to assure that a serious risk of potential asphyxia did not exist. By contrast, the claim that the nursing home had been notified of a risk of asphyxia by its employees but did nothing to rectify it sounded in ordinary negligence, as no expert testimony was necessary "to determine whether defendant's employees should have taken *some* sort of corrective action." 684 N.W.2d at 875-76.

Application of the *Bryant* test to the claims in count II demonstrates that these claims clearly sound in malpractice. First, the claims arose in a professional relationship. The doctor and nurse defendants in this case were assigned to the Kent County Jail by their employer for the sole purpose of attending to the medical needs of prisoners such as plaintiff. Second, the claims against them raise questions involving medical judgment and not issues within the knowledge and

experience of a lay jury. Plaintiff's complaint (¶ 50) specifically alleges a duty to provide plaintiff "with appropriate and reasonable medical care," including proper monitoring of his health and physical conditions, proper diagnosis, treatment and care, regular checking of signs and symptoms of medical illness, and timely referral to qualified medical providers. These are all duties that sound in medical malpractice, as the fulfillment of those duties requires medical judgment well beyond the experience of lay people. Consequently, under *Bryant*, the claims against the doctor and nurse defendants in count II must be considered medical malpractice claims.

The consequence of characterizing plaintiff's claim as sounding in medical malpractice is to subject it to the prerequisites imposed by Michigan law for the bringing of a malpractice claim, including the requirement that the complaint be accompanied by an affidavit of merit signed by a health professional, attesting to the defendants' failure to meet the standard of care. MICH. COMP. LAWS § 600.2912d(1). Plaintiff has failed to provide such affidavits for any of the defendants, a failure that requires dismissal as a matter of state law. Plaintiff asserts that the requirements of the medical malpractice statute should not apply to a federal-court action, because they are merely procedural. Judge Maloney, however, has thoroughly analyzed this issue, finding that the special tort reform provisions of Michigan law regulating medical malpractice actions are a matter of state substantive law under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and *Hanna v. Plumer*, 380 U.S. 460 (1965). *See Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824 (W.D. Mich. 2012). The extensive analysis set forth by Judge Maloney clearly demonstrates that the provisions of Michigan tort law governing malpractice cases are a matter of substantive law binding on the federal courts under *Erie*. As Judge Maloney pointed out, every federal appellate court reviewing similar state statutes has come to this conclusion. 845 F. Supp. 2d at 854 (collecting

cases). Judge Maloney persuasively rejected those decisions (including decisions of some judges in the Eastern District) that treat the requirements of Michigan tort law as establishing a mere pleading rule. On the basis of similar analysis, judges of this court routinely reject efforts by plaintiffs to "plead around" the Michigan malpractice statute by mischaracterizing their claim as one for gross negligence. *See, e.g., Smit v. Meyer*, No. 1:09-cv-213, 2010 WL 4365517, at * 9 (W.D. Mich. Oct. 27, 2010). Such claims sound in medical malpractice and are subject to the restrictions on such claims imposed by the Michigan Legislature.

Count II, as it pertains to the doctor and nurse defendants, is a disguised medical malpractice claim. These defendants are private citizens, not governmental employees. Under Michigan law, claims against licensed medical professionals that raise issues beyond the common understanding of the factfinder sound in medical malpractice, and they are subject to the mandatory requirements of the medical malpractice statute. These requirements are substantive in nature and apply in both federal and state courts. As plaintiff has admittedly not complied with the Michigan medical malpractice statute, state law requires dismissal of count II as to these defendants.

**Recommended Disposition**

For the foregoing reasons, I recommend that the motion of Kent County for judgment on the pleadings, as amended (docket # 20) be granted and that Kent County be dismissed as a defendant in this case. I further recommend that the motion of the Corizon defendants, as amended (docket # 19) be granted and that Corizon Health, Inc. be dismissed from count I and that Dr. Carrel and Nurses Kaufman, Albin and Rengo be dismissed as defendants from count II. If this

recommendation is accepted, count I would remain pending against all individual defendants and count II would remain pending against defendant Pavlovic.


Dated:  November 6, 2013          /s/  Joseph G. Scoville
                                  United States Magistrate Judge



**NOTICE TO PARTIES**

   Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).