UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHADNEY HAMER

        Plaintiff,

v.

COUNTY OF KENT, et al.,

        Defendants.

                                            /

File No. 1:13-CV-504

HON. ROBERT HOLMES BELL

## **OPINION**

        This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. The matter is presently before the Court on Defendants Carrel, Kaufman, and Albin's Motion for Summary Judgment, Defendant Pavlovic's Motion for Summary Judgment, and Defendant Rengo's Motion to Dismiss. Responses and Replies to all motions have been timely filed.

        Plaintiff's claims lie under the Eighth Amendment's bar on Cruel and Unusual Punishment, made applicable to him as a pretrial detainee by the Due Process Clause of the Fourteenth Amendment. On May 17, 2010, Plaintiff's appendix burst and he was taken to a local hospital for treatment. At issue is whether various defendants were deliberately indifferent to Plaintiff's serious medical need in the days leading up to his appendix rupture. For the following reasons the Court will grant Defendants Pavlovic's and Rengo's motions and deny Defendants Carrel, Kaufman, and Albin's motion.

**I.**

        The following facts are taken from the parties' briefs and the appended depositions and

exhibits. As of May 10, 2010, Plaintiff was a pretrial detainee in the Kent County Jail. On that date, he began to feel pain in his abdomen and to have issues urinating. On the evening of Thursday, May 13, 2010, he complained to prison staff for the first time. He was given a medical request form (a "kite") that he filled out and returned to prison staff.

As a result of Plaintiff's request for medical attention, Defendant Kaufman, a Registered Nurse, examined him on May 14, 2010, at approximately 1 a.m. Defendant Kaufman noted that Plaintiff's self-described complaint was "I've got pressure [in my lower abdomen] and I pee blood. Pain started three days ago." (Pl.'s Ex. 3, ECF No. 83-4.) Defendant Kaufman conducted an abdominal exam: listening for bowel sounds to check for proper blood circulation, examining for abnormal shape or color, and palpating the abdomen to check for tenderness. She also performed a urine analysis to check for blood. The urine analysis was negative, and Defendant Kaufman determined that Plaintiff was not in acute pain, both from her medical examination and from the fact that Plaintiff was talking and joking with her during the exam. Nonetheless, she noted his complaints in his chart, gave him non-prescription medicine for his pain, and put him on the schedule to see a physician for further evaluation.

On the evening of May 14, Plaintiff allegedly spoke to Defendant Albin during the distribution of medication to the inmates.[1] Plaintiff allegedly informed Defendant Albin that he was still in pain, that the medication Defendant Kaufman gave him was not helping, and that he needed to see a doctor. Defendant Albin allegedly told Plaintiff that he was unable to get him to a doctor,

---

[1] Defendant Albin denies that he was on duty the night of May 14. Plaintiff did, however, speak to someone about his pain that evening, as evidenced by the second kite that he successfully submitted. For the purpose of this statement of facts, the Court will continue to refer to the nurse Plaintiff spoke to as Defendant Albin.

but that he could give him another kite to fill out. Plaintiff took the kite, but reiterated his need to see a doctor. At that point, Defendant Albin allegedly told him to "suck it up" and terminated the conversation.

Nearly contemporaneously, Defendant Carrel, a physician, was reviewing inmate charts that had been flagged for his attention. Plaintiff's chart was on his list because Plaintiff's asthma prescription needed to be renewed. Defendant Carrel initialed Defendant Kaufman's urine analysis of Plaintiff, but testified that he could not recall whether he looked at her examination report, or if he was aware that Plaintiff had reported abdominal pain. Defendant Carrel testified that if he did not see Plaintiff as a result of Defendant Kaufman putting Plaintiff on the list for a physician evaluation, it was because Plaintiff was assigned to a different doctor.

Plaintiff filled out the second kite, submitting it late on May 14. It stated, "2nd attempt. I put in a [kite] to see a doctor for a problem. I have pressure on my bladder + stomach + back + sides. 1 being le[a]st 10 being worst, 8.9. Not an infection or STD. And motrin didn't work." (Pl.'s Ex. 6, ECF No. 83-7.) Defendant Rengo, a nurse, marked the kite as received around 1 a.m., on Saturday, May 15, 2010, writing "Triaged" and "Eval completed 5/14/10." (*Id.*)

Later on May 15, Plaintiff complained to non-party Officer Kevin Patrick about his stomach pain. According to the jail log, Officer Patrick contacted medical twice on May 15, about Plaintiff's abdominal pain, but no one in medical responded to the request. Defendant Carrel was on duty during the time Officer Patrick relayed the requests.

Plaintiff's next relevant interaction with jail staff came between 2 and 3 a.m. on Monday, May 17, 2010. Plaintiff climbed down from his bunk and vomited on the floor because of his pain. He pushed the emergency call button in his cell and Defendant Pavlovic allegedly responded, along

3

with non-party Deputy DeVormer. Defendant Pavlovic asked what was wrong, and Plaintiff explained that he was having severe stomach pain. Plaintiff, an ex-Marine was allegedly told by Defendant Pavlovic that he was "supposed to be tough" but was "acting like a Navy pussy" and that he should "clean this shit up." (Pl.'s Dep., ECF No. 70-3.) Nevertheless, Defendant Pavlovic's partner, non-party Deputy DeVormer, made the following entry in the jail log at 3:50 a.m., May 17:

> Inmate hit intercom button stating that he was in pain. I went back to the cell to check on him. I asked him what the matter was and he stated that he was in pain. I asked him to specify and he asked me my name. I told him my name and then asked him to specify what was hurting. At this time he stated that he was alright and that he would put in a kite in the morning. Medical Sharon [Kaufman] was tx'd and stated that he was on the doctors list. Medical was not interested in seeing the inmate at this time.

(Jail Log, ECF No. 83-2.) Finally, at 8 a.m., May 17, Plaintiff was taken to the hospital, where a CT scan revealed that his appendix had burst. He received surgery and was treated for a subsequent infection. Plaintiff now has a scar from the surgery and some residual pain.

## II.

**A.     Motion Standards**

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When the moving party will not carry the burden of proof at trial, the party must identify "those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotations omitted). A defendant moving for summary judgment is not required, however, to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In reviewing a Rule 12(c) motion to for judgment on the pleadings, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). Under the federal notice pleading standards, a complaint must contain "a short and plain statement of the claim showing how the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this statement is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).

The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. 678. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1583 (2012) (quoting *Iqbal*, 556 U.S. at 677). Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**B.     Phil Rengo, R.N.**

Defendant Rengo moves individually for judgment on the pleadings, on the basis that Plaintiff's claims against him are time-barred, pursuant to Rule 12(c). Defendant Rengo was not named in Plaintiff's original complaint. Rather, based on a hard to read signature in Plaintiff's medical record, a nurse named Amy Rice was named. On September 6, 2013, Nurse Rice filed a motion for summary judgment based on an affidavit of non-involvement (ECF No. 15). Following

a brief investigation by the parties into the identity of the nurse who signed the document, Plaintiff and Defendant PHS's counsel stipulated to the substitution of Defendant Rengo for Nurse Rice. The Court granted the stipulation by Order on October 18, 2013. (ECF No. 31.)

Defendant Rengo now argues that the Court should dismiss the count against him as time-barred. To determine whether a section 1983 action is timely, the Court must look to the relevant state-law limitations period. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (citing *Bd. of Regents of the Univ. of the State of New York v. Tomanio*, 446 U.S. 478, 483, (1980)). In the present case, Michigan's three-year limitation period for personal injury actions applies. *Harrison v. Mich.*, 722 F.3d 768, 772 (6th Cir. 2013).

Plaintiff's injury accrued, at the latest, on May 17, 2010, when his appendix burst and he was finally taken to the hospital. The limitations period expired, therefore, on May 17, 2013. He filed his complaint on May 8, 2013, and Defendant Rengo was added as a party on October 18, 2013. Plaintiff's claim against Defendant Rengo is only timely, therefore, if his substitution relates back to the original complaint under Fed. R. Civ. P. 15(c).

The Supreme Court has identified four factors that must be satisfied under Rule 15(c) in order for the substitution of a new party to relate back to the original complaint:

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 29 (1986). The parties disagree over the application of the third factor.

Counting three years plus the 120 days allowed by Rule 4(m) from May 17, 2010, makes the end of the limitations period Monday, September 15, 2013. Defendant Rengo argues that during that time he had no knowledge, actual or constructive, that Plaintiff's complaint might state a cause of action against him. Indeed, Defendant Rengo has not been employed at the Kent County Jail since the start of this litigation, and therefore had no way of knowing about Plaintiff's complaint or the circumstances surrounding his allegations. Therefore, Defendant Rengo argues, the third prong of the *Schiavone* test is not met, and the amendment to the complaint does not relate back.

Plaintiff makes several specious arguments in opposing Defendant Rengo's motion: (1) that Defendant Rengo had constructive notice of the suit because he now has the same attorney as Nurse Rice; (2) that the confusion over who the proper defendant was is Defendant Rengo's fault because his signature was illegible; and (3) that the 120 day tolling period of Rule 4(m) runs from the date of an order on a motion to proceed in forma pauperis.

As an initial matter, the Court notes that this case was *not* filed in forma pauperis, and therefore Plaintiff's argument that the 120 day tolling period of Rule 4(m) should run from a date later than the filing of his complaint is frivolous. Second, Defendant Rengo did not have the same attorney as Nurse Rice until *after* he was substituted as a party. Finally, it was and remains Plaintiff's duty to name the proper parties, and if he could not decipher the signature in his chart, the onus was on him to determine whose signature it was.

The Court holds, therefore, that the substitution of Defendant Rengo for Nurse Rice does not relate back to the filing of the initial complaint. Plaintiff's claims against Defendant Rengo are therefore time-barred, and will be dismissed with prejudice.

### C.      Deliberate Indifference

Although the Eighth Amendment does not apply to pretrial detainees, *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1986), the Due Process Clause of the Fourteenth Amendment "affords pretrial detainees a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Weaver v. Shadoan*, 340 F.3d 398, 410 (6th Cir. 2003). A claim under the Eighth Amendment comprises an objective and subjective component: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). For a medical claim, a prison official violates the Eighth Amendment when he or she is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 102, 104-05 (1976).

In a case with multiple defendants, the subjective prong of the test must be evaluated individually for each defendant. *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th. Cir. 2005). Further, liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th. Cir. 1991). Therefore each Defendant in this case will be evaluated individually.

In order for a prison official to evince a "deliberately indifferent" state of mind, the official must "know[] of and disregard[] an excessive risk to inmate health." *Farmer*, 511 U.S. at 837. It is not sufficient that an official *should have* known that an excessive risk of harm existed. *Id.* at 838. The official must know of facts from which an inference can be drawn there exists an excessive risk of harm, and must also draw the inference. *Id.* at 837. This state of mind requires something more than negligence. *Estelle*, 429 U.S. at 106. "Medical malpractice does not become a constitutional

violation merely because the victim is a prisoner." *Id.*

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

In the present case, the defendants do not argue that Plaintiff was not suffering from an objectively serious medical need. The Court's analysis therefore will focus on the subjective prong of the *Estelle* standard.

1.  <u>Deputy Jeffrey Pavlovic</u>

Defendant Pavlovic had one alleged contact with Plaintiff during the relevant time period. On the morning of May 17, 2010, Plaintiff testified that Defendant "Pavlovic and his partner came down" to respond to the emergency call button. Plaintiff had crawled out of his bunk in pain and vomited on the floor. Plaintiff alleges that Defendant Pavlovic verbally degraded him and ordered him to clean up his own vomit, threatening to move Plaintiff to solitary confinement if he did not comply.

Defendant Pavlovic denies that he responded to Plaintiff's sick call on May 17. Defendant Pavlovic asserts that he was assigned to a different part of the jail that night, and that Plaintiff's cell was a considerable distance from where he was working. He contends that non-party Deputy DeVormer responded alone to Plaintiff's call, and that because of his close physical resemblance to Deputy DeVormer, Plaintiff has them confused. Defendant Pavlovic has also submitted what he

purports is an assignment log showing he was in a different area of the jail.

There is a genuine issue of fact as to whether Defendant Pavlovic responded to Plaintiff's call for help on May 17, 2010. However, even assuming that Defendant Pavlovic was there and was verbally abusive, there is insufficient evidence for a reasonable jury to conclude that Defendant Pavlovic was deliberately indifferent to Plaintiff's serious medical need.

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Here it was inappropriate, even wrong, for Defendant Pavlovic to respond to Plaintiff's obvious distress the way he allegedly did. As other circuits have recognized however, "[m]ere allegations of verbal abuse do not present actionable claims under § 1983." *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993).

However, it is undisputed that Deputy DeVormer—who Plaintiff concedes also responded to his call—immediately notified the jail medical staff, who declined to examine Plaintiff. Plaintiff also concedes that Deputy DeVormer and Defendant Pavlovic responded to his call for help together. Thus, having alerted the medical staff to the incident, Defendant Pavlovic argues, "There is not any more that [Defendant] Pavlovic or DeVormer as deputies could do at that point." (Def. Pavlovic's Br. 9, ECF No. 76). Although he was allegedly unkind, there is no genuine issue of material fact as to whether Defendant Pavlovic was deliberately indifferent to Plaintiff's serious medical need because he and his partner alerted the medical staff to Plaintiff's distress. The Court will therefore enter summary judgment in his favor.

2.    Paul Albin, L.P.N.

Defendant Albin allegedly had a brief encounter with Plaintiff on the evening of May 14,

when medication was being distributed to the inmates. Plaintiff argues that Defendant Albin was deliberately indifferent to his serious medical need because he told Plaintiff to "suck it up" when Plaintiff stated he was in severe pain, refused to help Plaintiff be seen by a doctor, and instead merely gave Plaintiff another kite to fill out, despite Plaintiff's obvious distress.

Defendant Albin denies that he was working in Plaintiff's area the night of May 14, stating that his review of his work records showed he was assigned to the "old jail" that night. Defendant Albin he states that he did give Plaintiff medication on May 12. Even if he was working that night, Defendant Albin asserts he would not have spoken so harshly to Plaintiff. Defendant Albin provided no records that demonstrate he was working in the old jail on May 14, and therefore there is a genuine fact issue as to whether Defendant Albin interacted with Plaintiff on May 14.

Further, there are genuine issues of fact as to whether Defendant Albin was deliberately indifferent to Plaintiff's serious medical needs. Looking at the facts in a light most favorable to Plaintiff, the Court concludes that based on Plaintiff's complaint of extreme abdominal pain, coupled with his statement that the medicine he had been given was not helping his pain, there is a genuine issue of fact as to whether Defendant Albin was aware of facts that could give rise to an inference that Plaintiff faced a serious risk to his health and in refusing to help Plaintiff see a physician, he disregarded that risk. The Court will therefore deny summary judgment to Defendant Albin.

3.      Sharon Kaufman, R.N.

Defendant Kaufman examined Plaintiff, as described above, in the early morning hours of May 14. The examination was thorough, and having determined that Plaintiff was facing a serious medical need, Defendant Kaufman referred him to see a physician. If this were the extent of Defendant Kaufman's involvement, the Court would be left to conclude that Defendant Kaufman

should be free from liability because she recognized the risk to the inmate's health and responded reasonably.

However, Defendant Kaufman was also on duty on the morning of May 17. She responded to Deputy DeVormer's call when Plaintiff vomited in his cell, and yet responded that Plaintiff was on the list to see a doctor and that healthcare was not interested in seeing him. Even though Plaintiff reported to Deputy DeVormer that he was not presently in distress and that he would put in a kite in the morning, Defendant Kaufman was armed with enough knowledge about Plaintiff's condition to create a genuine issue of fact as to whether she disregarded a significant risk to Plaintiff's health when she declined to see him on May 17. Summary judgment in Defendant Kaufman's favor is therefore not appropriate.

4. <u>Daniel Carrel, D.O.</u>

Defendant Carrel never interacted directly with Plaintiff. Rather, he testified in his deposition that while reviewing charts set aside specifically for review of inmates' prescriptions, he renewed the Plaintiff's asthma prescription. Defendant Carrel also initialed the results of Plaintiff's urine analysis that Defendant Kaufman conducted. Defendant Carrel claims not to remember seeing any other part of Plaintiff's chart, including Defendant Kaufman's notes on her examination of Plaintiff detailing his pain and her recommendation that a physician examine Plaintiff.

Plaintiff's progress notes shows Defendant Carrel's signature next to a line that says "see order." This entry comes directly below Defendant Kaufman's May 14 assessment of Plaintiff. One page earlier is Defendant Kaufman's full write-up on the evaluation. On the following page are the results of Plaintiff's urine analysis, which Defendant Carrel initialed. There is sufficient evidence that a reasonable jury might disbelieve Defendant Carrel's assertion that he did not know the

13

symptoms Plaintiff was suffering, given his access to the chart and his signature and initials in areas of the chart where he should have been able to see those very symptoms. There is therefore a genuine issue of fact as to whether Defendant Carrel deliberately disregarded a serious risk to Plaintiff's health, and the Court cannot grant summary judgment in his favor.

**III.**

For the foregoing reasons, the Court will deny Defendants Carrel, Kaufman, and Albin's Motion for Summary Judgment, grant Defendant Pavlovic's Motion for Summary Judgment, and Grant Defendant Rengo's Motion to Dismiss.

The Court will enter an Order consistent with this Opinion.

Date:   August 21, 2014                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE